**UNITED STATES of America**

v.

**Ismael Juarez CISNEROS, Defendant.**

**No. CRIM.A. 04–283.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 24, 2005.

---

Ronald L. Walutes, Jr. Esquire, Patriica Giles, Esquire, United States Attorney's Office, Alexandria, VA, for Plaintiff.

James Clyde Clark, Esquire, Land Clark Carroll Mendelson & Blar, Nina J. Ginsberg, Esquire, DiMuro Ginsberg & Mook, Alexandria, VA, for Defendant.

### *MEMORANDUM ORDER*

LEE, District Judge.

THIS MATTER is before the Court on Defendant Ismael Juarez Cisneros's Proposed Procedures for Determining Mental Retardation. The defendant moves the Court to adopt certain procedures to determine whether he is mentally retarded, and therefore, ineligible for a sentence of death. The issues presented are (1) what is the definition of "mentally retarded" under the Federal Death Penalty Act; and (2) what procedure the Court will observe

in determining Mr. Cisneros's mental state to comply with the requirements of *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The Court holds that it will use the definition of mental retardation proposed by Mr. Cisneros, based on the American Association of Mental Retardation (AAMR)'s definition, as cited by the Supreme Court in *Atkins*. After the presentation of evidence during the penalty phase of this capital murder trial, the jury will be instructed to make a finding of whether the defendant has established that he is mentally retarded by a preponderance of the evidence. If the jury unanimously finds that the defendant is mentally retarded, he will not be eligible for the death penalty under *Atkins*. If the finding is not unanimous, however, the jury will be instructed that any juror who finds that the defendant is mentally retarded should consider their finding as a mitigating factor.

## I. BACKGROUND

The government alleged that Defendants Denis Rivera, Oscar Antonio Grande, Ismael Juarez Cisneros, and Oscar Alexander Garcia–Orellana conspired together to murder Brenda Paz, who was preparing to testify against Denis Rivera in his trial for the murder of Joaquin Diaz. All four defendants and the victim were members of the Mara Salvatrucha, also known as "MS–13." The government filed a Notice of Intent to Seek a Sentence of Death against all four defendants on October 1, 2004.

On May 18, 2005, the jury found Defendants Denis Rivera and Oscar Alexander Garcia–Orellana not guilty of all counts. Defendants Oscar Antonio Grande and Ismael Juarez Cisneros were found guilty of all counts. Mr. Cisneros has previously notified the Court and the government that he may be mentally retarded and has moved the court to adopt certain procedures with respect to determine whether

he is mentally retarded, and therefore, ineligible for a sentence of death.

## III. DISCUSSION

### A. Standard of Review

**Federal Death Penalty Act (FDPA)**

Since its reinstatement in 1988, the Federal Death Penalty Act prohibits the execution of mentally retarded defendants. Specifically, the FDPA provides:

> A sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person, who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person.

18 U.S.C. § 3596(c). The FDPA also identifies mental health as a possible mitigating factor in 18 U.S.C. § 3592(a)(1) (Impaired Capacity) and (a)(6) (Disturbance).

***Atkins v. Virginia***

In *Atkins v. Virginia*, the United States Supreme Court held that the execution of a mentally retarded individual is a violation of the Eighth Amendment's prohibition of cruel and unusual punishment. 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335. The Court "left to the states the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Id.* at 317, 122 S.Ct. 2242 (citations omitted). The Court's decision in *Atkins* makes clear, however, that the prohibition on execution applies to all defendants that "fall within the range of mentally retarded offenders about whom there is a national consensus." 536 U.S. at 317, 317 n. 22, 122 S.Ct. 2242. Accordingly, when adopting a statutory definition of mental retardation, states cannot adopt a definition that fails to protect any individuals who have mental retardation under a

definition embraced by a national consensus.

## B. Analysis

### Definition of Mental Retardation

The Court holds that it will use the definition of mental retardation proposed by Mr. Cisneros that is based on the American Association of Mental Retardation (AAMR)'s definition cited by the Supreme Court in *Atkins.* In *Atkins,* the Supreme Court cited the definition of mental retardation as promulgated by the AAMR:

> The American Association of Mental Retardation (AAMR) defines mental retardation as follows: Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18.

*Atkins,* 536 U.S. at 308 n. 3, 122 S.Ct. 2242 (citations omitted).

While the *Atkins* Court in *Atkins,* allowed the states to adopt their own definitions of mental retardation, the definition must encompass all defendants that "fall within the range of mentally retarded offenders about whom there is a national consensus." 536 U.S. at 317, 317 n. 22, 122 S.Ct. 2242.

 In response to *Atkins,* Virginia enacted legislation setting forth a process to enforce the constitutional restriction on the execution of mentally retarded individuals and established a definition of mental retardation. Virginia defines mental retardation as:

> a "disability, originating before the age of 18 years, characterized concurrently

by (i) significantly subaverage intellectual functioning as demonstrated by performance on a standardized measure of intellectual functioning administered in conformity with accepted professional practice, that is at least two standard deviations below the mean, and (ii) significant limitations in adaptive behavior as expressed in conceptual, social, and practical adaptive skills"

Va.Code § 19.2–264.3:1.1(A) (Michie 2005). The Court will use the following jury instruction defining mental retardation, as proposed by the defendant, for determining whether Mr. Cisneros is proven mentally retarded by a preponderance of the evidence:

#### Mental Retardation–Defined

The term "mentally retarded" means the condition of significantly sub-average intellectual functioning existing concurrently with significant deficits in adaptive behavior, both of which were manifested before the age of 18.

The term "significantly sub-average intellectual functioning" means an intelligence quotient of 70 or below.

The term "significant deficits in adaptive behavior" means diminished capacity to understand and process information, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand others' reactions.

*See* App. at 1, JURY INSTRUCTION NO. 11 (citing *Atkins,* 536 U.S. at 318, 122 S.Ct. 2242).

### The Jury's Determination of Mental Retardation

 The jury must determine, by a preponderance of the evidence, whether the defendant is mentally retarded. Under Virginia law the defendant bears the burden of establishing that he is mentally

retarded by a preponderance of the evidence. *See Walker v. True,* 399 F.3d 315, 320 (4th Cir.2005) (holding that habeas petitioner was entitled to evidentiary hearing on *Atkins* claim that his mental retardation precluded his execution); *see also* Va.Code Ann. § 19.2–264.3:1.1.

■ On May 18, 2005, the jury found Ismael Juarez Cisneros guilty on all counts. Accordingly, the case will proceed to a penalty phase under 18 U.S.C. § 3593. The parties will have the opportunity to present evidence, including expert testimony, regarding the defendant's possible mental retardation. After considering the evidence presented during the penalty phase in its entirety by both the defendant and the government, the case will proceed to the jury for deliberations. The issue of mental retardation will be listed as a mitigating factor on the special verdict form among the other mitigating factors. The mitigating factor will read as follows:

> That ISMAEL JUAREZ CISNEROS meets the diagnostic criteria for a finding of mental retardation. NUMBER OF JURORS WHO SO FIND_____

*See* App. at 2, Cisneros, Special Verdict Form, Mitigating Factor 16. On the special verdict form, the jurors will be instructed to indicate the number of jurors who have found that Mr. Cisneros was proven mentally retarded by a preponderance of the evidence. If the jurors find unanimously that Mr. Cisneros is proven mentally retarded by a preponderance of the evidence, the Court shall find that Mr. Cisneros is not death eligible. The defendant will then be sentenced to life imprisonment without the possibility of release, as required by statute. If less than twelve jurors find that Mr. Cisneros is mentally retarded, the jurors who make that finding will be instructed to consider that factor established in considering whether or not a sentence of death shall be imposed, regardless of the number of jurors who

agree that mental retardation has been established.

## IV. CONCLUSION

For the foregoing reasons, the Defendant's Proposed Procedures for Determining Mental Retardation are GRANTED IN PART.

The Clerk is directed to forward a copy of this Order to counsel of record.

### *APPENDIX*

1. Jury Instruction No. 11

### *JURY INSTRUCTION NO. 11 Mental Retardation–Defined*

The term "mentally retarded" means the condition of significantly sub-average intellectual functioning existing concurrently with significant deficits in adaptive behavior, both of which were manifested before the age of 18.

The term "significantly sub-average intellectual functioning" means an intelligence quotient of 70 or below.

The term "significant deficits in adaptive behavior" means diminished capacity to understand and process information, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand others' reactions.

*Atkins v. Virginia,* 536 U.S. 304, 318, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

2. Ismael Juarez Cisneros' Special Verdict Form

### SPECIAL VERDICT FORM

### GENERAL DIRECTIONS:

**This verdict form is supplied to you because you have previously found the defendant guilty of all five counts contained in the indictment that carry a possible penalty of death. You have**

also found the defendant eligible for the death penalty. Therefore, this form applies as to your findings on Count One (conspiracy to tamper with a witness or an Informant), Count Two (conspiracy to retaliate against a witness or an informant), Count Three (Killing a person aiding a federal investigation), Count Four (tampering with a witness or an informant), and Count Five (retaliating against a witness or an informant).

SECTION I. *STATUTORY AGGRA-VATING FACTORS* (Unanimously found by Jury on May 24, 2005)

As to COUNTS ONE, TWO, THREE, FOUR, and FIVE,

1) Defendant ISMAEL JUAREZ CISNEROS committed the offenses described in an especially heinous, cruel, or depraved manner in that it involved torture and serious physical abuse to Brenda Paz, also known as "Smiley."

 X PROVEN
_____ NOT PROVEN

2) Defendant ISMAEL JUAREZ CISNEROS committed the offenses described after substantial planning and premeditation to cause the death of Brenda Paz, also known as "Smiley."

 X PROVEN
_____ NOT PROVEN

SECTION II. NON–STATUTORY AGGRAVATING FACTORS

- You are required to find, as to each statement below, that it has been "PROVEN" or "NOT PROVEN" beyond a reasonable doubt.

- Your finding(s) in this Section, whether "PROVEN" or "NOT PROVEN" must be unanimous.

- You may find more than one non-statutory aggravating factor per count, so check all that apply.

As to COUNT ONE (Conspiracy to Tamper With a Witness or an Informant):

1. Defendant ISMAEL JUAREZ CISNEROS has engaged in a pattern of criminal activity including, but not limited to, the following:

(a) Defendant ISMAEL JUAREZ CISNEROS, a citizen of Mexico, has repeatedly entered the United States illegally. On or about February 13, 2004, defendant CISNEROS pled guilty to illegal re-entry after deportation.

(b) On or about April 17, 1999, defendant ISMAEL JUAREZ CISNEROS stabbed a fifteen-year-old victim four times in the back and once in the wrist at the Fairfax Towne Center shopping center in retaliation for the victim preventing co-defendant Oscar Antonio Grande from further assaulting a fellow student at school. On or about August 10, 1999, defendant CISNEROS pled guilty for this conduct.

(c) On or about July 2, 2003, defendant ISMAEL JUAREZ CISNEROS sold a 12–gauge, pistol-grip shotgun loaded with four rounds of ammunition to a confidential informant.

(d) On or about July 25, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol, ammunition, and cocaine to a confidential informant.

(e) On or about October 15, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(f) On or about October 29, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .380 caliber pistol and cocaine to a confidential informant.

(g) On or about November 4, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .38 caliber revolver, which was loaded, and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(h) On or about November 18, 2003, officers conducted a search of the residence occupied by defendant ISMAEL JUAREZ CISNEROS and recovered cocaine, tools of the drug trade, and ammunition.

_____ PROVEN

_____ NOT PROVEN

2. Defendant ISMAEL JUAREZ CISNEROS murdered Brenda Paz, also known as "Smiley," while knowing that she was pregnant at the time of her murder.

_____ PROVEN

_____ NOT PROVEN

3. Defendant ISMAEL JUAREZ CISNEROS committed Count One of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of MS–13 members for their criminal activity.

_____ PROVEN

_____ NOT PROVEN

4. Defendant ISMAEL JUAREZ CISNEROS attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and others' departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley," on July 13, 2003.

_____ PROVEN

_____ NOT PROVEN

5. The impact of the loss of Brenda Paz, also known as "Smiley," on her family is an aggravating factor.

_____ PROVEN

_____ NOT PROVEN

**As to COUNT TWO (Conspiracy to Retaliate Against a Witness or an Informant):**

1. Defendant ISMAEL JUAREZ CISNEROS has engaged in a pattern of criminal activity including, but not limited to, the following:

(a) Defendant ISMAEL JUAREZ CISNEROS, a citizen of Mexico, has repeatedly entered the United States illegally. On or about February 13, 2004, defendant CISNEROS pled guilty to illegal re-entry after deportation.

(b) On or about April 17, 1999, defendant ISMAEL JUAREZ CISNEROS stabbed a fifteen-year-old victim four times in the back and once in the wrist at the Fairfax Towne Center shopping center in retaliation for the victim preventing co-defendant Oscar Antonio Grande from further assaulting a fellow student at school. On or about August 10, 1999, defendant CISNEROS pled guilty for this conduct.

(c) On or about July 2, 2003, defendant ISMAEL JUAREZ CISNEROS sold a 12–gauge, pistol-grip shotgun loaded with four rounds of ammunition to a confidential informant.

(d) On or about July 25, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol, ammunition, and cocaine to a confidential informant.

(e) On or about October 15, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(f) On or about October 29, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .380 caliber pistol and cocaine to a confidential informant.

(g) On or about November 4, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .38 caliber revolver, which was loaded, and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(h) On or about November 18, 2003, officers conducted a search of the residence occupied by defendant ISMAEL JUAREZ CISNEROS and recovered cocaine, tools of the drug trade, and ammunition.

_____ PROVEN

_____ NOT PROVEN

2. Defendant ISMAEL JUAREZ CISNEROS murdered Brenda Paz, also known as "Smiley," while knowing that she was pregnant at the time of her murder.

_____ PROVEN

_____ NOT PROVEN

3. Defendant ISMAEL JUAREZ CISNEROS committed Count Two of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of MS–13 members for their criminal activity.

_____ PROVEN

_____ NOT PROVEN

4. Defendant ISMAEL JUAREZ CISNEROS attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and others' departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley," on July 13, 2003.

_____ PROVEN

_____ NOT PROVEN

5. The impact of the loss of Brenda Paz, also known as "Smiley," on her family is an aggravating factor.

_____ PROVEN

_____ NOT PROVEN

**As to COUNT THREE (Killing a Person Aiding a Federal Investigation):**

1. Defendant ISMAEL JUAREZ CISNEROS has engaged in a pattern of criminal activity including, but not limited to, the following:

(a) Defendant ISMAEL JUAREZ CISNEROS, a citizen of Mexico, has repeatedly entered the United States illegally. On or about February 13, 2004, defendant CISNEROS pled guilty to illegal re-entry after deportation.

(b) On or about April 17, 1999, defendant ISMAEL JUAREZ CISNEROS stabbed a fifteen-year-old victim four times in the back and once in the wrist at the Fairfax Towne Center shopping center in retaliation for the victim preventing co-defendant Oscar Antonio Grande from further assaulting a fellow student at school. On or about August 10, 1999, defendant CISNEROS pled guilty for this conduct.

(c) On or about July 2, 2003, defendant ISMAEL JUAREZ CISNEROS sold a 12–gauge, pistol-grip shotgun loaded with four rounds of ammunition to a confidential informant.

(d) On or about July 25, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol, ammunition, and cocaine to a confidential informant.

(e) On or about October 15, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol and cocaine to an undercover agent with the

Bureau of Alcohol, Tobacco, Firearms and Explosives.

(f) On or about October 29, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .380 caliber pistol and cocaine to a confidential informant.

(g) On or about November 4, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .38 caliber revolver, which was loaded, and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(h) On or about November 18, 2003, officers conducted a search of the residence occupied by defendant ISMAEL JUAREZ CISNEROS and recovered cocaine, tools of the drug trade, and ammunition.

_____ PROVEN

_____ NOT PROVEN

2. Defendant ISMAEL JUAREZ CISNEROS murdered Brenda Paz, also known as "Smiley," while knowing that she was pregnant at the time of her murder.

_____ PROVEN

_____ NOT PROVEN

3. Defendant ISMAEL JUAREZ CISNEROS committed Count Three of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of MS–13 members for their criminal activity.

_____ PROVEN

_____ NOT PROVEN

4. Defendant ISMAEL JUAREZ CISNEROS attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and others' departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley," on July 13, 2003.

_____ PROVEN

_____ NOT PROVEN

5. The impact of the loss of Brenda Paz, also known as "Smiley," on her family is an aggravating factor.

_____ PROVEN

_____ NOT PROVEN

**As to COUNT FOUR (Tampering With a Witness or an Informant):**

1. Defendant ISMAEL JUAREZ CISNEROS has engaged in a pattern of criminal activity including, but not limited to, the following:

(a) Defendant ISMAEL JUAREZ CISNEROS, a citizen of Mexico, has repeatedly entered the United States illegally. On or about February 13, 2004, defendant CISNEROS pled guilty to illegal re-entry after deportation.

(b) On or about April 17, 1999, defendant ISMAEL JUAREZ CISNEROS stabbed a fifteen-year-old victim four times in the back and once in the wrist at the Fairfax Towne Center shopping center in retaliation for the victim preventing co-defendant Oscar Antonio Grande from further assaulting a fellow student at school. On or about August 10, 1999, defendant CISNEROS pled guilty for this conduct.

(c) On or about July 2, 2003, defendant ISMAEL JUAREZ CISNEROS sold a 12–gauge, pistol-grip shotgun loaded with four rounds of ammunition to a confidential informant.

(d) On or about July 25, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol, ammunition, and cocaine to a confidential informant.

(e) On or about October 15, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(f) On or about October 29, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .380 caliber pistol and cocaine to a confidential informant.

(g) On or about November 4, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .38 caliber revolver, which was loaded, and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(h) On or about November 18, 2003, officers conducted a search of the residence occupied by defendant ISMAEL JUAREZ CISNEROS and recovered cocaine, tools of the drug trade, and ammunition.

_____ PROVEN

_____ NOT PROVEN

2. Defendant ISMAEL JUAREZ CISNEROS murdered Brenda Paz, also known as "Smiley," while knowing that she was pregnant at the time of her murder.

_____ PROVEN

_____ NOT PROVEN

3. Defendant ISMAEL JUAREZ CISNEROS committed Count Four of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of MS–13 members for their criminal activity.

_____ PROVEN

_____ NOT PROVEN

4. Defendant ISMAEL JUAREZ CISNEROS attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threaten-

ing to kill anyone who revealed to law enforcement details of his and others' departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley," on July 13, 2003.

_____ PROVEN

_____ NOT PROVEN

5. The impact of the loss of Brenda Paz, also known as "Smiley," on her family is an aggravating factor.

_____ PROVEN

_____ NOT PROVEN

**As to COUNT FIVE (Retaliating Against a Witness or an Informant):**

1. Defendant ISMAEL JUAREZ CISNEROS has engaged in a pattern of criminal activity including, but not limited to, the following:

(a) Defendant ISMAEL JUAREZ CISNEROS, a citizen of Mexico, has repeatedly entered the United States illegally. On or about February 13, 2004, defendant CISNEROS pled guilty to illegal re-entry after deportation.

(b) On or about April 17, 1999, defendant ISMAEL JUAREZ CISNEROS stabbed a fifteen-year-old victim four times in the back and once in the wrist at the Fairfax Towne Center shopping center in retaliation for the victim preventing co-defendant Oscar Antonio Grande from further assaulting a fellow student at school. On or about August 10, 1999, defendant CISNEROS pled guilty for this conduct.

(c) On or about July 2, 2003, defendant ISMAEL JUAREZ CISNEROS sold a 12–gauge, pistol-grip shotgun loaded with four rounds of ammunition to a confidential informant.

(d) On or about July 25, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol, ammunition,

and cocaine to a confidential informant.

(e) On or about October 15, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .45 caliber pistol and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(f) On or about October 29, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .380 caliber pistol and cocaine to a confidential informant.

(g) On or about November 4, 2003, defendant ISMAEL JUAREZ CISNEROS sold a .38 caliber revolver, which was loaded, and cocaine to an undercover agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

(h) On or about November 18, 2003, officers conducted a search of the residence occupied by defendant ISMAEL JUAREZ CISNEROS and recovered cocaine, tools of the drug trade, and ammunition.

_____ PROVEN

_____ NOT PROVEN

2. Defendant ISMAEL JUAREZ CISNEROS murdered Brenda Paz, also known as "Smiley," while knowing that she was pregnant at the time of her murder.

_____ PROVEN

_____ NOT PROVEN

3. Defendant ISMAEL JUAREZ CISNEROS committed Count Five of the Indictment to prevent Brenda Paz, also known as "Smiley," from and to retaliate against her for assisting in the investigation and prosecution of MS–13 members for their criminal activity.

_____ PROVEN

_____ NOT PROVEN

4. Defendant ISMAEL JUAREZ CISNEROS attempted to obstruct justice after murdering Brenda Paz, also known as "Smiley," by threatening to kill anyone who revealed to law enforcement details of his and others' departure from the Holiday Inn Fair Oaks with Brenda Paz, also known as "Smiley," on July 13, 2003.

_____ PROVEN

_____ NOT PROVEN

5. The impact of the loss of Brenda Paz, also known as "Smiley," on her family is an aggravating factor.

_____ PROVEN

_____ NOT PROVEN

**REGARDLESS OF WHETHER YOU HAVE ANSWERED "PROVEN" OR "NOT PROVEN" TO ANY OF THE QUESTIONS IN SECTION II, YOU MUST PROCEED TO SECTION III WHICH FOLLOWS ON THE NEXT PAGE.**

### SECTION III. *MITIGATING FACTORS*

**DIRECTIONS FOR SECTION III:**

● **In this section, please indicate in the space provided the number of jurors who have found the existence of that mitigating factor to be proven by a preponderance of the evidence with regard to each of the capital counts. You will note each question requires a count of the number of jurors who vote that such finding has been made. If no jurors vote that such a finding has been made, indicate so by placing a "0" in the space provided.**

● **Your vote as a jury *need not be* unanimous with regard to each question in this section. A finding with respect to a mitigating factor may be made by one or more of the members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such a fac-**

tor established in considering whether or not a sentence of death shall be imposed, regardless of the number of other jurors who agree that the factor has been established.

Ismael Juarez Cisneros has alleged the following mitigating factors in his background or character, the circumstances of the crimes, or other relevant facts or circumstances as mitigation. If any one juror finds any such factor established by a preponderance of the evidence, he or she may weigh that factor against any aggravating factors:

1. ISMAEL JUAREZ CISNEROS' capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charges against him;

NUMBER OF JURORS WHO SO FIND _____

2. ISMAEL JUAREZ CISNEROS was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charges against him;

NUMBER OF JURORS WHO SO FIND _____

3. ISMAEL JUAREZ CISNEROS committed the offense under severe mental or emotional disturbance;

NUMBER OF JURORS WHO SO FIND _____

4. Another Defendant or Defendants, equally culpable in the crime will not be punished by death;

NUMBER OF JURORS WHO SO FIND _____

5. That should the jury so direct, ISMAEL JUAREZ CISNEROS will be sentenced to life in prison without any possibility of release if he is not sentenced to death;

NUMBER OF JURORS WHO SO FIND _____

6. That a sentence of life imprisonment without the possibility of release is severe and exacts both significant physical restraint and hardship as well as great psychological pain, particularly because ISMAEL JUAREZ CISNEROS is left for years to contemplate his wrongdoing and to feel the loss of his children and family;

NUMBER OF JURORS WHO SO FIND _____

7. That given his jail record and the fact that ISMAEL JUAREZ CISNEROS has adapted well to the prison environment, he will not present a risk to prison officials or other inmates and will make an excellent adjustment to prison if he is sentenced to life imprisonment without the possibility of release;

NUMBER OF JURORS WHO SO FIND _____

8. That ISMAEL JUAREZ CISNEROS has performed numerous acts of kindness and generosity for his family, his child Maria Isabel and Jorge Gomez, the son of Maria Gomez who ISMAEL JUAREZ CISNEROS treats as his own, through which he has demonstrated that there are other human beings for whom he cares;

NUMBER OF JURORS WHO SO FIND _____

9. That ISMAEL JUAREZ CISNEROS' children, mother and siblings will be adversely affected if he is executed;

NUMBER OF JURORS WHO SO FIND _____

10. That ISMAEL JUAREZ CISNEROS is active in his daughter Maria Isabel's life and in the life of Maria Gomez' son Jorge;

NUMBER OF JURORS WHO SO FIND _____

11. That ISMAEL JUAREZ CISNEROS was raised in an environment of poverty and financial hardship;

NUMBER OF JURORS WHO SO FIND _____

12. That ISMAEL JUAREZ CISNEROS was subjected to emotional and physical abuse, abandonment and neglect as a child, including violence and brutality toward himself, his siblings, and his mother, and was deprived of the parental guidance and protection which he needed;

NUMBER OF JURORS WHO SO FIND _____

13. That ISMAEL JUAREZ CISNEROS suffers from neurological impairments which should have been identified and which could have been treated when he was a child and adolescent;
NUMBER OF JURORS WHO SO FIND _____

14. That ISMAEL JUAREZ CISNEROS suffers from brain dysfunction which has impaired his ability to function in the absence of strong support and guidance;
NUMBER OF JURORS WHO SO FIND _____

15. That ISMAEL JUAREZ CISNEROS suffers from a severe susceptibility to alcohol and drug abuse;
NUMBER OF JURORS WHO SO FIND _____

16. That ISMAEL JUAREZ CISNEROS meets the diagnostic criteria for a finding of mental retardation;
NUMBER OF JURORS WHO SO FIND _____

17. That ISMAEL JUAREZ CISNEROS was introduced to addictive drugs and alcohol as a child;
NUMBER OF JURORS WHO SO FIND _____

18. That ISMAEL JUAREZ CISNEROS grew up in an impoverished, brutal neighborhood wherein he was exposed to extreme violence, including the murder of his closest friend, as a child and throughout his life;
NUMBER OF JURORS WHO SO FIND _____

19. That ISMAEL JUAREZ CISNEROS was the victim of sexual abuse as a child;
NUMBER OF JURORS WHO SO FIND _____

20. That ISMAEL JUAREZ CISNEROS was exposed to graphic sexual behavior as a child;
NUMBER OF JURORS WHO SO FIND _____

21. That ISMAEL JUAREZ CISNEROS' father was physically and emotionally abusive to ISMAEL JUAREZ CISNEROS and his siblings, depriving him of a positive male role model during his formative years;
NUMBER OF JURORS WHO SO FIND _____

22. That ISMAEL JUAREZ CISNEROS suffered from multiple traumatic brain injuries as a child;
NUMBER OF JURORS WHO SO FIND _____

23. That ISMAEL JUAREZ CISNEROS suffers from deficient intelligence, neuropsychological deficits and other problems for which he never received adequate intervention and care;
NUMBER OF JURORS WHO SO FIND _____

24. That ISMAEL JUAREZ CISNEROS has endured multiple insults to his central nervous system (including loss of consciousness, physical abuse and substance abuse);
NUMBER OF JURORS WHO SO FIND _____

25. That ISMAEL JUAREZ CISNEROS' cognitive and neurological deficits made it more likely that he would behave impulsively and without insight or judgment;
NUMBER OF JURORS WHO SO FIND _____

26. That ISMAEL JUAREZ CISNEROS obtained a sense of acceptance and belonging from his involvement in MS–13;
NUMBER OF JURORS WHO SO FIND _____

27. That at the time of the offense, ISMAEL JUAREZ CISNEROS was youthful, although not under the age of 18;
NUMBER OF JURORS WHO SO FIND _____

28. That ISMAEL JUAREZ CISNEROS' eagerness to be accepted by the members of MS–13 allowed him to be easily manipulated by other gang members;
NUMBER OF JURORS WHO SO FIND _____

29. That ISMAEL JUAREZ CISNEROS committed the offenses for which he has been convicted based upon his sincere but misguided belief that his conduct was mandated by the rules of MS–13;
NUMBER OF JURORS WHO SO FIND _____

30. That ISMAEL JUAREZ CISNEROS cared for Brenda Paz as a person and attempted to discourage others from agreeing to her murder;
NUMBER OF JURORS WHO SO FIND _____

31. That prior to his involvement with MS–13, ISMAEL JUAREZ CISNEROS had not been convicted of any criminal offense;

NUMBER OF JURORS WHO SO FIND _____

32. That ISMAEL JUAREZ CISNEROS was effectively raised and indoctrinated in the rules and behavior of MS–13 which promoted a culture of criminal activity and violence;

NUMBER OF JURORS WHO SO FIND _____

33. That, despite his strong need for acceptance by members of MS–13, ISMAEL JUAREZ CISNEROS voluntarily waived his constitutional right to silence and fully cooperated with law enforcement when interviewed regarding the murder of Brenda Paz and provided law enforcement with significant information that greatly assisted the United States in the prosecution of ISMAEL JUAREZ CISNEROS and others for the murder of Brenda Paz;

NUMBER OF JURORS WHO SO FIND _____

34. That other members of MS–13 who were involved in the conspiracy to murder Brenda Paz will not be punished by death;

NUMBER OF JURORS WHO SO FIND _____

35. That ISMAEL JUAREZ CISNEROS cooperated with law enforcement despite the fact that his cooperation placed himself and his family at risk of retaliation by MS–13;

NUMBER OF JURORS WHO SO FIND _____

36. That ISMAEL JUAREZ CISNEROS, as a result of his cooperation with law enforcement, has severed his ties to MS–13;

NUMBER OF JURORS WHO SO FIND _____

37. That ISMAEL JUAREZ CISNEROS has repeatedly expressed remorse for his role in the murder of Brenda Paz in his conversations with members of MS–13 and with law enforcement;

NUMBER OF JURORS WHO SO FIND _____

The following extra spaces are provided to write in additional mitigating factors, if any, found by any one or more jurors. If none, write "NONE" and line out the extra spaces with a large "X." If more space is needed, write "CONTINUED" and use the reverse side of this page.

1. _____
_____
_____
_____

NUMBER OF JURORS WHO SO FIND _____

2. _____
_____
_____
_____

NUMBER OF JURORS WHO SO FIND _____

3. _____
_____
_____
_____

NUMBER OF JURORS WHO SO FIND _____

## SECTION IV. DETERMINATION OF SENTENCE

**DIRECTIONS: In this section, enter your determination of the defendant's sentence with regard to each of the five capital counts. Your vote as a jury must be unanimous with regard to death. If the jury is not unanimous with respect to death, the sentence will be life imprisonment without the possibility of release.**

Based upon consideration of whether the aggravating factors found to exist sufficiently outweigh any mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of any mitigating factors, whether the aggravating factors alone are sufficient to justify a sentence of death:

**As to COUNT ONE:**

_____ We unanimously sentence the defendant to death

_____ We unanimously sentence the defendant to life imprisonment without the possibility of release

_____ We are unable to agree unanimously as to a sentence of death and therefore understand that the defendant will be sentenced to life imprisonment without the possibility of release

**As to COUNT TWO:**

_____ We unanimously sentence the defendant to death

_____ We unanimously sentence the defendant to life imprisonment without the possibility of release

_____ We are unable to agree unanimously as to a sentence of death and therefore understand that the defendant will be sentenced to life imprisonment without the possibility of release

**As to COUNT THREE:**

_____ We unanimously sentence the defendant to death

_____ We unanimously sentence the defendant to life imprisonment without the possibility of release

_____ We are unable to agree unanimously as to a sentence of death and therefore understand that the defendant will be sentenced to life imprisonment without the possibility of release

**As to COUNT FOUR:**

_____ We unanimously sentence the defendant to death

_____ We unanimously sentence the defendant to life imprisonment without the possibility of release

_____ We are unable to agree unanimously as to a sentence of death and therefore understand that the defendant will be sentenced to life imprisonment without the possibility of release

**As to COUNT FIVE:**

_____ We unanimously sentence the defendant to death

_____ We unanimously sentence the defendant to life imprisonment without the possibility of release

_____ We are unable to agree unanimously as to a sentence of death and therefore understand that the defendant will be sentenced to life imprisonment without the possibility of release

Each juror must sign below, indicating that the above sentence determination reflects the jury's unanimous decision:

_____ _____

_____ _____

_____ _____

_____ _____

_____ _____

_____ **FOREPERSON**

DATE: _____, 2005.

**CONTINUE TO SECTION V**

**SECTION V: CERTIFICATION**

By signing below, each juror certifies that consideration of the race, color, religious beliefs, national origin or sex of the defendant or the victim was not involved in reaching his or her individual decision, and that the individual juror would have made the same recommendation regarding a sentence for the crime or crimes in question regardless of the race, color, religious beliefs, national origin, or sex of the defendant, or the victim.

_____ _____

_____ _____

_____ _____

_____ _____

FOREPERSON

DATE: \_\_\_\_, 2005.